IN  THE  UNITED  STATES  COURT  OF  FEDERAL  CLAIMS


TIMOTHY  MOORE,

      Plaintiff,

v.                                                                  No.  21-1931
                                                                    (Senior  Judge  Lettow)
UNITED  STATES  OF  AMERICA,

      Defendant.


PLAINTIFF'S  BRIEF  IN  OPPOSITION  TO  MOTION  TO  DISMISS  COMPLAINT


[Oral  Argument  Requested]


Peter  B.  Broida
Suite  203
1840  Wilson  Blvd.
Arlington,  VA  22201
703-841-1112
703-841-1006  (facsimile)
peterbroida@gmail.com

Attorney  for  Plaintiff

December  17,  2021

CONTENTS

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . 1

    B.    FACTUAL SUMMARY . . . . . . . . . . . . . . . . . . . 1

    C.    THIS COURT'S REVIEW IS *DE NOVO* . . . . . . . . . . . . 3

    D.    MOORE NEED NOT ESTABLISH THROUGH HIS COMPLAINT THAT AN
          EPA VIOLATION IN A COMPARATOR-TO-COMPARATOR CASE IS
          BASED ON DIRECT OR CIRCUMSTANTIAL EVIDENCE OF INTENTIONAL
          DISCRIMINATION OR DISPARATE IMPACT . . . . . . . . . . . 4

    E.    MOORE NEED NOT NOW DISPROVE THAT IT WAS NECESSARY FOR
          HIM TO APPLY FOR PAY TRANSITION TO ASSERT AN EPA
          COMPLAINT . . . . . . . . . . . . . . . . . . . . . 24

    F.    RECOVERY PERIOD . . . . . . . . . . . . . . . . . . . 26

    G.    DISCOVERY TO BE SOUGHT BY PLAINTIFF . . . . . . . . . 30

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 31

AUTHORITIES

CASES

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974) . . . . . . . . . . 25

*Alvarado v. Board of Trustees of Montgomery Community College*, 848 F.2d 457 (4th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . 9

*Boaz v. FedEx Customer Information Services, Inc.*, 725 F.3d 603 (6th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . 25

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) . . . . . . . . . . 25

*Branch v. United States*, 101 Fed. Cl. 411 (2011) . . . . . . . . . . . 23

*Brooks v. United States*, 101 Fed. Cl. 340 (2011) . . . . . . . . . . . 21

*Chandler v. Roudebush*, 425 U.S. 840 (1976) . . . . . . . . . . . . . . 4

*Coalition to End the Permanent Congress v. Runyon*, 979 F.2d 219 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cooke v. United States*, 85 Fed. Cl. 325 (2008) . . . . . . . . . . . 7, 27

*County of Los Angeles v. Davis*, 440 U.S. 625 (1979) . . . . . . . . . . 9

*EEOC v. White & Son Enters.*, 881 F.2d 1006 (11th Cir. 1989) . . . . . 28

*Gomez v. Toledo*, 446 U.S. 635 (1970) . . . . . . . . . . . . . . . . . 4

*Gordon v. United States*, 130 Fed. Cl. 604 (2017) . . . . . . . . . . . 11

*Gordon v. United States*, 903 F.3d 1248 (Fed. Cir. 2018), *vacated*, ____Fed. Appx.____ (2/25/2019) . . . . . . . . . . . . . . . . . . 9, 12

*Griggs v. Duke Power Co.*, 401 U.S. 424 (1971) . . . . . . . . . . . . 19

*Hauschild v. United States,* 53 Fed. Cl. 134 (2002) . . . . . . . . . . 4, 7

*Hazelwood School District v. United Slates*, 433 U.S. 299 (1977) . . . . . 19

*Jordan v. United States*, 119 Fed. Cl. 694 (2015) . . . . . . . . . . . . 5

*Jordan v. United States*, 122 Fed. Cl. 230 (2015) . . . . . . . . 7, 23, 27

*Kaplan v. United States*, 126 Fed. Cl. 72 (2016) . . . . . . . . . . . . 8

*Kaplan v. United States*, ____Fed. Appx.____ (Fed. Cir. 2018 NP) . . . . . 24

*Lange v. United States*, 79 Fed. Cl. 628 (2007) . . . . . . . . . . . . . 26

*Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618 (2007) . . . 5

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) . . . . . . 4, 19

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988) . . . . . . . . 29

*Molden v. United States*, 11 Cl. Ct. 604 (1987) . . . . . . . . . . . . . 8

*Moorehead v. United States*, 84 Fed. Cl. 745 (2008) . . . . . . . . . . 7

*Mudge v. United States*, 59 Fed. Cl. 527 (2004) . . . . . . . . . . . . 25

Santiago v. United States, 107 Fed. Cl. 154 (2012) . . . . . . . . . . . 8

*Spellers v. United States*, ____Fed. Cl. ____ (No. 18-47C 12/1/21) . . . . 23

*Teamsters v. United States*, 431 U.S. 324 (1977) . . . . . . . . . . . . 19

*Totes-Isotoner Corp. v. United States*, 594 F.3d 1346 (Fed. Cir. 2010) . . 20

*United States v. Munsingwear*, 340 U.S. 36 (1950) . . . . . . . . . . . 10

*Univ. of Tennessee v. Elliott*, 478 U.S. 788 (1986) . . . . . . . . . . . 4

*Yant v. United States* 85 Fed. Cl. 264 (2009) . . . . . . . . . . . . . 16

*Yant v. United States*, 588 F.3d 1369 (Fed. Cir. 2009) . . . . . . . 16, 17

*Weber v. United States*, 71 Fed. Cl. 717 (2006) . . . . . . . . . . . . 26

STATUTES AND REGULATIONS

29 USC 206 . . . . . . . . . . . . . . . . . . . . . . . . . 5

5 CFR 551.104 . . . . . . . . . . . . . . . . . . . . . . 26, 29

EEOC Management Directive 915.003 (Compensation Discrimination) . . . . 19

OTHER

*Black's Law Dictionary* . . . . . . . . . . . . . . . . . . . . . 9

Deyling, Robert P., *Dangerous Precedent: Federal Government Attempts to Vacate Judicial Decisions upon Settlement*, 27 J. Marshall L. Rev. 689 (1994) . . 10

Orly, Lobel, *Knowledge Pays: Reversing Information Flows and the Future of Pay Equity*, 120 Col. L. Rev. 547 (April 2020). . . . . . . . . . . . . . . . 16

ARGUMENT

A.    INTRODUCTION

The government's arguments are: (1) that at the pleading stage Moore must show not only that there was a differential in pay covered by the Equal Pay Act, but that the differential was based on sex through direct or circumstantial proof of discriminatory intent or disparate impact of an SEC pay transition process; (2) that Moore took himself out of the running of EPA protection, as a matter of law, by not timely applying for pay transition. The government does not otherwise argue the insufficiency of Moore's complaint; there's no suggestion that the complaint fails to place the government on fair notice of the substance of the claim.

B.    FACTUAL SUMMARY

The facts alleged are taken from the complaint, with some augmentation through a documentary appendix drawn from SEC documents.

Tim Moore, an attorney, serves at SEC headquarters as an exam manager, a position he has held since 2008.[1] He identified two female exam managers at the same facility, Ms. Monahan and Ms. Curley, who perform like duties under

---

[1] The job is more fully described in general in a position description [App. 23] and more specifically in a performance work plan [App. 28] These documents are somewhat opaque, but unlike some EPA cases, there seems to be no dispute over the comparability of the named examiners work with that of Tim Moore. SEC conceded at least one of the female examiners named by Moore was a comparator in SEC's summary judgment motion to EEOC. [App. 73]

like working conditions requiring like skill and experience, but who are paid substantially more than Moore. The differential resulted from SEC's implementation of a pay transition process starting in 2014, announced to SEC staff, for which applications in the form of a resume and an expression of interest were solicited. [App. 1] The application period was brief—a month in late 2014. Moore did not then apply because he was preoccupied with family medical matters. Ms. Monahan and Ms. Curley applied and received substantial raises through the transition program. Those pay increases continue, that is, they appear to be permanent. When Moore learned of the substantial disparity, the open period for the program had long passed. In 2016 Moore expressed his concerns about the resultant inequity to his own managers and to the Chief HR (personnel) officer at SEC, whose responsibilities included the transition program. The HR Chief told Moore he could not be belatedly considered for pay transition, but he could complain through the EEO process or the agency grievance procedure. Moore followed the advice and complained through the EEO process [App. 3, 8], but that secured him no remedy. He turned to this Court.

Anticipating likely affirmative defenses that the government may raise when it answers the complaint, Moore's complaint asserted that the transition program's application process, involving submission of a resume, was not necessary, for SEC already had employee resumes on file and its records included performance appraisals, performance workplans, and position descriptions that provided all the

information needed to evaluate current employees' duties, skills, and experience.[2] Moore asserted there is no financial reason that SEC can continue to pay raises for those who timely entered pay transition but not him as a belated applicant.[3]

In its motion to dismiss, the government does not suggest that Moore and the two female exam managers are inappropriate comparators[4] or that Moore has inadequately pleaded the essential facts of his case. Setting aside the application process for pay transition, the government's principal argument is that Moore has not pleaded a theory advanced by the government that the an EPA comparator case must include as part of a plaintiff's *prima facie* pleading burden nonfrivolous assertions that the wage disparity resulted from sex-based discrimination that is either intentional or the result of class-wide employment practices that are discriminatory in effect.

C.    THIS COURT'S REVIEW IS *DE NOVO*

---

[2]Taken from the SEC's EEO record, the appendix includes the performance workplans of Moore and the two comparators, showing the similarity of their work [App. 28, 39, 50]; the position description for the Exam Manager job [App. 23].

[3] An SEC OIG report from 2017 provides a summary of the transition program. The finances, as described in that report, are not all that clear, but the report appears to state that resultant adjustments amounted to about $21 million per year [App. 12-13], and those adjustments are permanent, i.e., continue during the careers of each of the more than 1,000 SEC employees who received raises through the program. [App. 16-17]

[4] SEC admitted that Moore and at least one of the women were comparators under EPA's standards. [App. 63, 73]

The Court considers Moore's complaint *de novo.*[5]

The government references as part of EEO the process preceded this suit a decision by an EEOC administrative judge. To the extent that judge made factual conclusions, they are not dispositive here in this *de novo* proceeding. To be sure, the administrative record contains material factual information concerning operation of the pay transition program and comparators to Moore—some of those materials are included in the accompanying appendix. [[App. 23, 28] ] Plaintiff does not now seek to rebut analysis of the EEOC AJ, for that is not the office of a response to a motion testing the sufficiency of Moore's complaint here.[6] Depending on the defenses raised by the government, additional information may be sought by Moore through discovery that this Court may authorize.

D.   MOORE NEED NOT ESTABLISH THROUGH HIS COMPLAINT THAT AN EPA VIOLATION IN A COMPARATOR-TO-COMPARATOR CASE IS BASED ON DIRECT OR CIRCUMSTANTIAL EVIDENCE OF INTENTIONAL DISCRIMINATION OR DISPARATE IMPACT

One premise of the government's motion to dismiss is that a complaint of an EPA violation requires a *prima facie* showing of intentional sex discrimination or sex-based adverse impact of an employment practice through direct or

---

[5] *E.g., Univ. of Tennessee v. Elliott,* 478 U.S. 788, 795 (1986); *Chandler v. Roudebush,* 425 U.S. 840, 846 (1976); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 799 (1973).

[6] Judge Miller noted the problem of conflating allegations of an EPA complaint establishing a *prima facie* case and affirmative defenses. *Hauschild v. United States,* 53 Fed. Cl. 134, 142 (2002) ("Rather than putting the seniority system forward as an affirmative defense, defendant seems to offer it as evidence that plaintiff cannot make a prima facie case."). Plaintiff need not rebut actual or potential affirmative defenses in his complaint. *See Gomez v. Toledo,* 446 U.S. 635 640 (1970).

circumstantial evidence.

That's not the law for a case dependent on individual comparators. Were discriminatory intent required, there would be no distinction between an EPA and Title VII case—a result supported by no controlling precedent.[7] *See Jordan v. United States*, 119 Fed. Cl. 694 (1/12/2015) (Lettow, J.) (on motion to dismiss).[8]

EPA, an FLSA amendment, defines a form of sex discrimination without requiring that the discrimination be intentional or result from disparate impact of employment practices. Under 29 USC 206:

(d) Prohibition of sex discrimination

(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (I) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any

---

[7] *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 640 (2007) ("EPA does not require the filing of a charge with the EEOC or proof of intentional discrimination. See § 206(d)(1) (asking only whether the alleged inequality resulted from "any other factor other than sex")."

[8] n.2 ". . . "[a] discrimination claim for unequal pay under Title VII ... is generally analyzed under the same standards as [apply under] the E[qual] P[ay] A[ct], with the exception that intentional discrimination is required under Title VII." *Hughes v. Xerox Corp.*, No. 12-cv-6406, 37 F.Supp.3d 629, 644 (W.D.N.Y.2014) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir.1995), abrogated on other grounds by *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998))."

employee.

It is the differentiation of wages that creates a basic EPA claim and potential employer liability. The claim and liability are overcome by proof of a statutory affirmative defense (subject to rebuttal as pretextual).

If a *prima facie* case requires a showing of intentional discrimination, the "other than sex" statutory defense is superfluous; if a plaintiff proves intentional wage discrimination, the employer cannot show the disparity is for reasons other than sex.

Decisional law is in accord.

To establish a *prima facie* case under the Equal Pay Act, a plaintiff must establish that he or she received a lower wage for performing "equal work . . . requir[ing] equal skill, effort, and responsibility" to that carried out by a comparator of the opposite sex under similar working conditions. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. § 206(d)(1)); *see also Brooks v. United States*, 101 Fed. Cl. 340, 344 (2011); *Branch v. United States*, 101 Fed. Cl. 411, 414 (2011) (citing *Yant*, 588 F.3d at 1374; *Moorehead v. United States*, 84 Fed. Cl. 745, 747 (2008)). The "comparator" selected by the plaintiff must be a particular individual whose work enables a "'factor by factor'" comparison and may not be "a hypothetical or 'composite' [member of the opposite sex]." *Strag v. Board of Trustees*, 55 F.3d 943, 948 (4th Cir. 1995) (quoting *Houck v. Virginia Polytechnical Inst.*, 10 F.3d 204, 206 (4th Cir. 1973)); *see also Santiago*, 107 Fed. Cl. at 158; *Moorehead v. United States*, 88 Fed. Cl. 614, 619 (2009). In addition, "equal" does not mean identical but rather "substantially equal," and the court in its analysis should focus on the individuals' primary rather than incidental duties. *See Branch*, 101 Fed. Cl. at 414 (citing 29 C.F.R. §§ 1620.13(a), 1620.14); *see also Santiago*, 107 Fed. Cl. at 158 (citing *Shultz v. Wheaton Glass Co.*, 421 F.2d 259, 265 (3d Cir. 1970)).

Once plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to show that the pay differential falls under one of the Equal Pay Act's four enumerated exceptions, *County of Wash. v. Gunther*, 452 U.S. 161, 169 (1981); *Corning Glass*, 417 U.S. at 196, namely, "(I) a seniority system; (ii) a merit system; (iii) a system which measures earnings by

quantity or quality of production; or (iv) a differential based on any other factor other than sex," 29 U.S.C. § 206(d)(1). [footnotes omitted]

*Jordan v. United States,* 122 Fed. Cl. 230, 241 (7/17/2015) (Lettow J.) (on summary judgment).[9]

There is no required showing of intent or bias to establish a *prima facie* EPA case:

> . . . The plaintiff need not show that the wage disparity results from a gender bias or from a discriminatory practice on the part of the defendant. *Hauschild,* 53 Fed. Cl. at 141 (citing *Ellison,* 25 Cl. Ct. at 487); *Jenkins,* 46 Fed. Cl. at 563 (citing *Molden,* 11 Cl. Ct. at 610). Furthermore, the similar treatment of other employees of a different gender cannot defeat a plaintiff's prima facie showing that she received different pay than a similarly-situated employee of the opposite sex. *Hauschild,* 53 Fed. Cl. at 141-42 (citations omitted); *Ellison,* 25 Cl. Ct. at 487 (citing *Molden,* 11 Cl. Ct. at 610). . . .

*Cooke v. United States,* 85 Fed. Cl. 325, 341 (2008) (Wheeler, J.)

Similarly, from *Moorehead v. United States,* 84 Fed. Cl. 745, 748 (2008) (Miller, J.):

> The Government spends little time arguing that there is no pay differential between female and male screeners, and the Government appears to concede that male screeners perform substantially the same duties as female screeners. Def.'s Resp. to Findings ¶ 11. Instead, the Government's main argument is that the reasons for any pay disparity are not gender based. Def.'s Mot. at 12-13. This argument, however, is not pertinent to whether plaintiff can establish a prima facie case. *Beck-Wilson v. Principi,* 441 F.3d 353, 363 (6th Cir. 2006) ("Factors like education and experience are considered as a defense to an employer's liability rather than as part of a plaintiff's prima facie case."); *Kouba v. Allstate Ins. Co.,* 691 F.2d 873, 875 (9th Cir. 1982).

---

[9] *Hauschild v. United States,* 53 Fed. Cl. 134, 138 (2002) (Miller, J.) (similar analysis of *prima facie* case and affirmative defenses).

From *Molden v. United States*, 11 Cl. Ct. 604, 610 (1987) (Tidwell, J.):

> Defendant contends that an element of establishing a prima facie case is that the wage disparities of an Equal Pay Act violation must be based on sex discrimination. This contention is not supported by the language of the Act or from judicial interpretations of the law. The United States Court of Appeals for the Fifth Circuit in *Hodgson v. American Bank of Commerce*, 447 F.2d 416 (5th Cir. 1971), faced with the question of whether the plaintiff had to show that the wage disparity was sex based, held that the plaintiff had no such burden. *Id.* at 420. Defendant argued that in *Hodgson v. Corning Glass Works*, 474 F.2d 226 (2d Cir. 1973), *affd, Corning Glass Works v. Brennan*, 417 U.S. 188, 94 S. Ct. 2223, 41 L.Ed.2d 1 (1974), the court implied that sexual bias must be shown. 474 F.2d at 231. However, *Hodgson* is based on *Shultz v. Wheaton Glass Co.*, 421 F.2d 259 (3rd Cir. 1970), and that the court in *Shultz* found that the burden of proving sexual bias was met solely by showing the existence of a wage differential between male and female employees doing equal work. *Id.*

*Kaplan v. United States*, 126 Fed. Cl. 72, 81 (2016) (Bruggink, J.)[10], denying summary judgment, explained that once the plaintiff establishes a *prima facie* case through wage differentiation among comparators, the burden shifts to the government to justify that differential under one of four statutory exemptions. Judge Bruggink explored the element of willfulness, but given the citation to *Adams v. United States*, 350 F.3d 1216 (Fed. Cir. 2003), Judge Bruggink was apparently referring to the extended FLSA statute of limitations for an EPA violation, not to an element of underlying EPA liability. *See Santiago v. United States*, 107 Fed. Cl. 154, 158 (2012) (Wiese, J.).

Advanced by the government are two Federal Circuit decisions argued to show that an EPA plaintiff must establish discrimination on a basis other than a

---

[10] Decision and judgment following trial, *Kaplan v. United States*, 133 Fed. Cl. 235 (2017), *aff'd.*, *Kaplan v. United States*, ___Fed. Appx.__ (Fed. Cir. 2018 NP).

wage disparity (e.g., through direct or circumstantial evidence of discrimination) through a complaint's allegations.

First cited is *Gordon v. United States*, 903 F.3d 1248 (Fed. Cir. 2018), *vacated*, ___Fed.Appx.___(2/25/2019). Its value as precedent is questioned.

The government's motion says, at p. 7, that *Gordon* was "vacated on other grounds," but a reference to the Federal Circuit order does not state anything other than a reference to a motion to withdraw the underlying petition and a conclusion that "The opinion and judgment of the court entered on September 7, 2018 is vacated."[11] Plaintiff cannot find anything in the Federal Circuit's rules or decisions (or recent decisions of this Court) about the effect of a vacated opinion.

Mixed is the authority on the value of a vacated appellate decision. A venerable copy of *Black's Law Dictionary* (Revised Fourth Edition), says "vacate" is to annul; to set aside; to cancel or rescind, to render an act void; as, to vacate an entry of record, or a judgment."

The lexicographer's approach is not the final word. At least is seems that a vacated appellate decision is of no precedential effect. *See County of Los Angeles v. Davis*, 440 U.S. 625, n.6 (1979) (citing *Connor v. Donaldson*, 422 U. S. 563, n. 12 (1975); *A. L. Mechling Barge Lines v. United States*, 368 U.S. 324, 329-330 (1961)).[12] But we are told, at n. 10 of the *Los Angeles* dissent:

---

[11] https://cafc.uscourts.gov/opinions-orders/17-1845.order.2-25-2019.1.pdf

[12] A vacated opinion has precedential value only if has been later validated by the court. *See Alvarado v. Board of Trustees of Montgomery Community College*, 848 F.2d 457, 459 (4th Cir. 1988).

Although a decision vacating a judgment necessarily prevents the opinion of the lower court from being the law of the case, *O'Connor v. Donaldson*, 422 U. S. 563, 577-578, n. 12 (1975); *A. L. Mechling Barge Lines v. United States*, 368 U. S. 324, 329-330 (1961); *United States v. Munsingwear*, Inc., 340 U. S. 36 (1950), the expressions of the court below on the merits, if not reversed, will continue to have precedential weight and, until contrary authority is decided, are likely to be viewed as persuasive authority if not the governing law of the Ninth Circuit.

According to *United States v. Munsingwear*, 340 U.S. 36, 40-41 (1950), with a vacated decision the parties are then left to relitigate issues, and "none is prejudiced by a decision which in the statutory scheme was only preliminary," avoiding "spawning any legal consequences."

One commentator remarked:

Vacated opinions lose their precedential value simply by virtue of the designation "vacated." In the American legal system, reliance on a vacated decision is to invite ridicule at best, disaster at worst. Because the system places a high value on "authority," i.e., prior case law supporting a litigant's position, a vacated opinion carries little weight. This is true partly because courts seldom publish opinions explaining why they are vacating a decision. Without such an explanation, a litigant or court cannot determine whether the legal underpinnings of the vacated decision remain sound. In addition, many vacated decisions vanish entirely from the law books. If a decision is vacated before it appears in a bound volume of a law reporter, only a simple note stating that the opinion has been vacated will await the curious legal researcher. [footnotes omitted]

Deyling, Robert P., *Dangerous Precedent: Federal Government Attempts to Vacate Judicial Decisions upon Settlement*, 27 J. Marshall L. Rev. 689, 693 (1994).[13]

An appellate judge commented:

Even a mooted decision that is not vacated still retains precedential value, since the very reason we vacate is to remove a decision's precedential

---

[13]https://repository.law.uic.edu/cgi/viewcontent.cgi?article=1801&context=lawreview

effect. *See* 13A C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE 2d § 3533.10, at 442-43 (1984). And even a vacated opinion, while no longer the law of the case, still may carry "persuasive authority," *see Los Angeles v. Davis*, 440 U.S. 625, 646 n. 10, 99 S.Ct. 1379, 1391 n. 10, 59 L.Ed.2d 642 (1979) (Powell, J., dissenting), and even some precedential value, *see Action Alliance of Senior Citizens v. Sullivan*, 930 F.2d 77, 83 (D.C. Cir.1991).

*Coalition to End the Permanent Congress v. Runyon*, 979 F.2d 219, n.2 (D.C. Cir. 1992) (from the dissenting opinion of Judge Silberman).

Since the government urges the significance of the vacated *Gordon* opinion, and Plaintiiff cannot be certain sure it has none, he responds to it.

Leading to the Circuit's decision was the decision in *Gordon v. United States,* 130 Fed. Cl. 604 (2017) (Hodges, J.). Bearing slight similarity to Moore's situation, Gordon and Maxwell, female VA physicians, complained they'd not received pay raises garnered by male emergency medicine department counterparts. The government asserted the plaintiffs either did not submit a resume allegedly needed for pay panel evaluation (Dr. Gordon) or that the resume was untimely submitted (an intervening pay freeze) (Dr. Maxwell). It seems that a male comparator who received a raise may not have provided a current resume..

The opinion of Senior Judge Hodges evaluated conflicting evidence on whether the men who got raises were comparators to the women. Factual disputes left the Court with an incomplete record for summary disposition. Turning to the "resume requirement," the Court determined the record offered "little support for defendant's assertions that pay panels could not meet without having received current resumes in advance." But then the Court went on to accept

affidavits of VA officials who denied any efforts to discriminate and to determine the resume requirement was not applied unevenly and did not have the potential for gender discrimination.[14]

Matters advanced to the Federal Circuit, that court reviewing the entry of summary judgment by the trial court. *Gordon v. United States*, 903 F.3d 1248 (Fed. Cir. 2018), where analysis took a quite different approach.

At the onset of the *Gordon* opinion, footnote 1 referenced the Supreme Court's *Ledbetter* decision:

> The EEOC is a separate avenue of relief for an Equal Pay Act claim. An individual alleging an Equal Pay Act violation may go directly to court or file an EEOC charge. *See generally Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 640, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007) (noting that "the [Equal Pay Act] does not require the filing of a charge with the EEOC or proof of intentional discrimination"), *superseded by statute on other grounds*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2 (2009).

The Federal Circuit then turned to what it viewed as plaintiff's EPA burden, 903 F.3d at 1252:

> To make a prima facie case of an EPA violation, a plaintiff must show that the employer paid employees of opposite sexes different wages for equal work for jobs that require "equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1); *Corning Glass Works v. Brennan* , 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). This court's decision in *Yant v. United States* further requires that, as part of the prima facie case, an EPA plaintiff bears the burden of showing "that discrimination based on sex exists or at one time existed." 588 F.3d 1369, 1373 (Fed. Cir. 2009). Once an employee in an EPA case establishes a prima facie case of salary discrimination, the burden of persuasion shifts to the employer to prove that the wage disparity was justified by one of four permissible reasons: (1) a seniority system; (2) a

---

[14]    From review of the docket sheet, this Court's decision in *Gordon* appears to have followed discovery and a motion for summary judgment. The parties had the opportunity to develop the factual record through discovery, which has not here occurred.

merit system; (3) a pay system based on quantity or quality of output; or (4) a disparity based on any factor other than sex. 29 U.S.C. § 206(d)(1). Applying that analysis, the court determined that plaintiffs raised a genuine issue of fact as to payment of different wages to employees of the opposite sex. And the court determined that there was a material factual issue raised as to whether the male doctors were comparators to the plaintiffs, i.e., whether their jobs required equal skill, effort, and responsibility under similar working conditions.

But Plaintiffs' case foundered for lack of evidence that the doctors' pay disparity was based on sex, *id.* at 1254:

> To make their prima facie case, however, Appellants must also establish that the pay differential between the similarly situated employees is "historically or presently based on sex." *Yant*, 588 F.3d at 1372. Appellants point to no evidence that the pay differential complained of was based on sex, either historically or presently. Instead, Appellants argue that the evidence of clear pay disparities between Appellants and the similarly situated male doctors permits a fact finder to draw an inference that discrimination based on sex exists or existed. Reply Br. 6–7. This court in *Yant*, however, held that plaintiffs bear the burden of showing that the complained-of pay differential is based on sex; allowing a plaintiff to satisfy this requirement merely through an inference drawn from the statutory elements of the prima facie case under the EPA is not sufficient. Thus, because Appellants fail to establish a prima facie case of an EPA violation, summary judgment is appropriate. [footnote omitted]

Judge Reyna filed additional views expressing concern about the Circuit's EPA interpretation, *id.* at 1254-57:

> I write separately to express my belief that this court's holding in *Yant v. United States*, 588 F.3d 1369 (Fed. Cir. 2009), should be revisited and the requirement that plaintiff prove, as part of their prima facie case under the Equal Pay Act, that the pay differential is presently or historically based on sex be reversed. The *Yant* requirement that a plaintiff bringing suit additionally show that the complained-of difference in pay is presently or historically based on sex improperly shifts the burden from the employer to disprove discrimination to the plaintiff to prove discrimination. Such a shift is improper under the statute and at odds with Supreme Court precedent and the law of other circuits.
>
> . . .

*Yant* imposes an extra-statutory requirement onto the EPA plaintiff's prima facie case. As noted by then-Circuit Judge Prost in her concurrence, the decision in *Yant* "imports a novel requirement into the plaintiff's prima facie case in granting summary judgment." *Yant*, 588 F.3d at 1375 (Prost, J., concurring) (emphasis added). Before *Yant*, the EPA simply required a plaintiff to show wage discrimination between employees of different sex—i.e., that employees of different sex were paid differently for the same work under substantially similar conditions. Yant requires not only that the plaintiff show wage discrimination, but also sex discrimination—i.e., that the reason for the difference in pay is due to sex.

*Yant* concerned a mixed-sex group of plaintiffs. Nurse practitioners employed by the United States Department of Veterans Affairs brought suit under the EPA alleging that, as predominantly female nurse practitioners, they were paid at a lower rate than the predominantly male physician assistants, performing jobs of equal skill, effort, and responsibility under similar working conditions. *Yant v. United States*, 85 Fed. Cl. 264, 266 (2009). The summary judgment record revealed that the plaintiffs' class was composed of 80% females, while the higher-paid physician assistants were 40% female. *Id.* at 272. The Court of Federal Claims granted summary judgment for the Government, concluding that although a group of plaintiffs does not have to be exclusively one gender to bring an EPA claim, the *Yant* plaintiffs had failed to establish their prima facie case; broadly, the fact that almost half of the putatively disadvantaged sex participated in the higher-paid group was sufficient to deny liability at summary judgment because the plaintiffs failed to establish that the employer paid different wages to employees of opposite sexes. *See id.*

. . .

*Yant* shifts the burden onto the plaintiff to affirmatively prove discrimination, rather than on the employer to disprove discrimination. The Supreme Court in *Corning Glass* made clear that the EPA plaintiff has the burden of initially showing that the employer pays workers of one sex more than workers of the opposite sex for equal work. 417 U.S. at 196. After this prima facie case is established, the burden of both production and persuasion shift to the employer to show, as an affirmative defense, that the pay differential is due to one of four reasons permitted under the statute, namely a seniority, merit, or production output system, or any differential based on a factor other than sex. *Id.* at 196–97; *Brinkley-Obu*, 36 F.3d at 344. "[T]he risk of nonpersuasion rests with the employer on the ultimate issue of liability," *Fallon v. Illinois*, 882 F.2d 1206, 1213 (7th Cir. 1989), and accordingly, once the plaintiff raises a prima facie case of pay discrimination, unless the employer can prove that "one or more affirmative defenses are applicable . . . ., the plaintiff will prevail." *EEOC v. Md. Ins.*

*Admin.*, 879 F.3d 114, 120 (4th Cir. 2018).

> Thus, *Yant's* requirement that the plaintiff prove that the complained-of pay differential is based on sex is nonsensical given the employer's clear burden under the statute and *Corning Glass* to disprove that any pay differential between employees of opposite sex performing substantially the same work is based on sex. No other circuit imposes such a requirement on the plaintiff. *See, e.g.*, *Rizo v. Yovino*, 887 F.3d 453, 459 (9th Cir. 2018); *Md. Ins. Admin*, 879 F.3d at 120; *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1312 (10th Cir. 2006); *Stanziale v. Jargowsky*, 200 F.3d 101, 107–08 (3d Cir. 2000); *Brinkley-Obu*, 36 F.3d at 344; *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1136 (5th Cir. 1983).

> *Yant's* requirement that an EPA plaintiff must affirmatively prove that a pay differential between employees of different sexes is historically or presently based on sex is at odds with the broadly remedial nature of the EPA to redress wage discrimination between employees of different sex. Because its holding is counter to the statutory structure, the Supreme Court's precedent, and the law of other circuits, I urge this court to consider revisiting this precedent.

The *Gordon* decision attracted attention. Rehearing *en banc* was requested, the government filed a responsive brief and an *amicus* brief was filed by the ACLU on behalf of twenty or more local and national civil rights organizations—focused on *Yant's* refashioning of traditional EPA burdens of proof, and what the *amici* characterized at p. 7 of its brief[15] as

> . . .*Yant's* extra-statutory and muddled addition to the EPA plaintiff's prima facie case. . . . Instead of proving just unequal pay for equal work, an EPA plaintiff under *Yant* must make some unspecified kind of "showing that discrimination based on sex exists or at one time existed." 588 F.3d at 1373. . . .

Then the appeal was dismissed, the *Gordon* opinion was vacated.[16]

Academic commentary about *Gordon* and *Yant*, next discussed, has not been

---

[15] https://www.aclu.org/legal-document/gordon-v-united-states-amicus-brief

[16] https://cafc.uscourts.gov/opinions-orders/17-1845.order.2-25-2019.1.pdf

favorable. The Federal Circuit is viewed as an outlier in its insistence on a showing of purposeful or intentional discrimination as part of a *prima facie* EPA case. *See* Lobel Orly, *Knowledge Pays: Reversing Information Flows and the Future of Pay Equity*, 120 Col. L. Rev. 547, 584 (April 2020).

Consideration turns to *Yant v. United States*, 588 F.3d 1369 (Fed. Cir. 2009), the second case on which the government relies.

We start with this Court's decision. *Yant v. United States* 85 Fed. Cl. 264 (2009) (Miller, J.) (transferred from the U.S. District Court for the Middle District of Tennessee), involved a consolidated group of 40 or more men and women working as VA nurse practitioners. Their complaint was NPs' work was equivalent to physician assistants, most PAs were men, most NPs were women, and the compensation scheme for the two positions favored men.

No ordinary EPA case was *Yant*. The usual EPA case is based on a couple or more comparators of different gender and similar work and dissimilar pay—the situation with Mr. Moore. The government here injects a nuanced and expertly argued defense, but a basic EPA comparator case it remains. The *Yant* class or consolidated group of plaintiffs depended on statistical analysis argued to show sex-based discrimination. It could as well have been a Title VII class action.

Moore follows the traditional EPA path a disparity of pay among comparators of different sex doing the same work, leaving the defendant to establish one of the EPA affirmative defenses, subject to rebuttal.

*Yant* was resolved through alternative motions to dismiss or summary judgment. From the Court's opinion, "Plaintiffs allege that the VA intentionally, or

recklessly, has discriminated against NPs because they are predominantly female." *id.* at 266. The Claims Court described the defense, *id.* at 268, 270:

> Defendant's motion to dismiss challenges whether plaintiffs have established a prima facie case under the EPA. Defendant argues that the gender composition of NPs working for the TVHS, the class of employees asserting the EPA challenge, is too heterogenous to qualify as claimants under the EPA. Thus, if the EPA does not apply to this case due to excessive gender diversity among the groups of NPs and PAs, the complaint must be dismissed for lack of subject matter jurisdiction.
> . . .
>
> Defendant argues that the EPA was not intended to address pay disparities in mixed gender groups when the gender diversity includes a "substantial" number of both men and women.

The Court explained that no "judicial brightlines" have been drawn for "the minimum gender ratio that will defeat the protections afforded by EPA, but the Court favored the government's position, *id.* at 271-72:

> The EPA was not intended to remedy such a diffuse situation; rather, the EPA addresses unequal pay when the groups are not mixed. Plaintiffs do not present that circumstance. Therefore, defendant's motion for summary judgment is granted.

*Yant* advanced to the Federal Circuit, that court affirming summary judgment. *Yant v. United States*, 588 F.3d 1369 (Fed. Cir. 2009). The Circuit declined to exclude from EPA mixed-gender class-based actions. And the circuit recognized that a *prima facie* EPA case does not require proof of discriminatory intent. However, the Circuit stated, *id.* at 1373-74:

> . . . there is a fundamental difference between a showing of discriminatory intent and a showing that discrimination based on sex exists or at one time existed.
>
> . . .
>
> We are mindful of the Supreme Court's admonition that permitting

-17-

employers to avoid liability under the Equal Pay Act "by agreeing to allow some women to work . . . at a higher rate of pay as vacancies occurred would frustrate, not serve, Congress' ends." *Corning Glass Works*, 417 U.S. at 208. This case, however, is completely devoid of the historical discrimination at issue in *Corning Glass Works*, and the record before us does not suggest that the TVHS is hiring female PAs to avoid liability under the Equal Pay Act. An Equal Pay Act violation is established when an employee demonstrates past or present discrimination based on sex. There has been no such showing here. Therefore, the ratios of males to females are irrelevant. Because the Yant plaintiffs fail to raise a genuine issue of material fact that the pay differential between NPs and PAs is based on sex, they have failed to make a prime facie case.

Although Judge Prost concurred in *Yant's* result, she added, *id.* at 1375-76:

. . . As the majority recognizes, the EPA does not require a discriminatory intent. Nevertheless, it proceeds to state that "there is a fundamental difference between a showing of discriminatory intent and a showing that discrimination based on sex exists or at one time existed." In attempting to draw this line, the majority fails to recognize the fundamental difference between establishing a prima facie case sufficient to survive a motion for summary judgment and ultimate success on the merits.

The EPA provides, in relevant part:

No employer having employees subject to any provisions of this section shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, *except where* such payment is made pursuant to (I) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . .

29 U.S.C. § 206(d)(1) (emphasis added). By establishing all of the elements of his or her prima facie case—"that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions,'" *Corning*, 417 U.S. at 195—a plaintiff has effectively shown that discrimination based on sex exists or at one time existed, at least for purposes of surviving a motion for summary judgment. Nothing else is required.

*Yant* is inapplicable to Tim Moore's complaint. His is not a statistically-based class-type action resting on statistical analysis and resulting inferences.[17] It is a comparison of the pay rates of one male SEC exam manager and a couple counterpart women doing the same work at the same agency facility. The basic case—that is, the *prima facie* case—is, without denigrating Moore's claim, garden variety. Complexity may arrive in later analysis, following discovery, of the affirmative defenses.

Nowhere can it be found that Congress, or the Supreme Court, or any other court, or the EEOC[18], has determined that there has to be a demonstration

---

[17]  Analysis of the traditional Title VII case involving inferential proof of discrimination against an individual is through the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (in the context of a nonselection): the *prima facie* case is made out if the plaintiff belongs to a racial minority, she applies for and is qualified for a job the employer is trying to fill; she is rejected; the employer continues to seek applicants of plaintiff's qualifications. The employer then has the burden to articulate a legitimate, nondiscriminatory reasons for the rejection. The plaintiff may then seek to prove the employer's reason is pretextual. For class action Title VII cases, the proof is different. Under *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971), a *prima facie* case can be made out through inference based on statistical disparities that are alleged to result from defined employment practices (testing or measuring procedures). The employer must rebut the inference by demonstrating that the objectionable practice is related to successful job performance. *See Teamsters v. United States*, 431 U.S. 324, 339 (1977) (*prima facie* case of systemwide discrimination established by statistics of driver workforce); *Hazelwood School District v. United Slates*, 433 U.S. 299, 307 (1977) (statistical analysis of pattern or practice employment complaint:: "Where gross statistical disparities can be shown, they alone may, in a proper case, constitute *prima facie* proof of a pattern or practice of discrimination").

[18]  EEOC applies the customary approach in its Directive 915.003, Section 10 on Compensation Discrimination:

E.  Prima facie Case:  Appropriate  Comparison

of historical sex-based discriminatory patterns of compensation, or current intentionally sex-based discriminatory compensation decisions, to make out a basic one-on-one (here, one-on-two) EPA comparator case. The government may yet deflect Moore's complaint by summary judgment or following trial, but not by its peremptory dismissal.

How to reconcile the vacated *Gordon* decision, seemingly applying the *Yant* class action analysis to an EPA case involving individual comparators? The two are not reconciled other than by recognition that *Gordon* carries no precedential weight and is not persuasive given the lack of support for its theory by any other court and the internal division represented by the concurring opinion. And *Yant* is structurally inapplicable: class action analysis through statistics[19] drawn from

---

1.  Opposite-Sex  Comparators

A prima facie EPA violation is established by showing that a male and a female receive unequal compensation for substantially equal jobs within the same establishment. A complainant cannot compare herself or himself to a hypothetical male or female; rather, the complainant must show that a specific employee of the opposite sex earned higher compensation for a substantially equal job.

There is no requirement that the complainant show a pattern of sex-based compensation disparities in a job category. In other words, if a woman is paid less than male employees performing the same work, the lack of other women with low salaries in the job category does not preclude finding an EPA violation as to the complainant. However, the employer's treatment of other women is relevant to the complainant's case—if other women are paid the same as or more than males, this may indicate that a factor other than sex explains the complainant's compensation. [footnote omitted]

https://www.eeoc.gov/laws/guidance/section-10-compensation-discrimination#B.%20Elements%20of%20Claim

[19]   *Yant* receives limited application by the Federal Circuit—in *Totes-Isotoner Corp. v. United States*, 594 F.3d 1346 (Fed. Cir. 2010) (Concurring opinion by

hiring and compensation patterns is distinct from an individual comparator analysis.

Noting the distinction between an EPA suits involving individual comparators and gender-mixed class actions, Judge Bruggink explained in *Brooks v. United States*, 101 Fed. Cl. 340, 345-46 (2011), involving the plaintiff's assertion that she was paid less than a male for equal work (after a merits hearing):

> The Supreme Court laid the groundwork for analysis of claims under the Equal Pay Act in *Corning Glass Works v. Brennan*, 417 U.S. 188 (1974). In that case, Corning Glass Works paid higher wages to its male night shift inspectors than to its female day shift inspectors. State laws prohibited women from working at night, but the pay difference between the men and women extended beyond the shift differential; the men received a base wage that was significantly higher than that which the women received. Id. at 190-91. At some point between 1944 and 1964—when the Equal Pay Act became effective—the state laws changed, and women were permitted to work at night. After a series of changes to their wage schemes, Corning Glass Works still had a system that effectively retained the gender-biased pay differential for anyone hired prior to 1969. *Id.* at 194. In determining whether there was a violation of the Equal Pay Act, the Court placed the burden of proof on plaintiff to show "that an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Id.* at 195 (internal citation omitted). Plaintiff carried this burden by demonstrating that no matter what time the inspections were occurring, the women were performing the same work as the men for less money. *Id.* at 208. The Supreme Court held that defendant had failed to prove any affirmative defense because the reason for the original pay differential was rooted in the "generally higher wage level of male workers and the need to compensate them for performing what were regarded as demeaning tasks." *Id.* at 205 (internal citation omitted).
>
> The Federal Circuit applied *Corning Glass Works in Yant v. United States*, 588 F.3d 1369 (Fed. Cir. 2009). That case involved a class action of two mixed gender groups: physician assistants and nurse practitioners. Each argued that the other group was being paid more for the same work

---

Judge Prost), involving a sex-based equal protection challenge to Impact of tariffs on gloves imported for men compared to the treatment of the same apparel for women. *Id.* at 1356.

despite one group having different educational requirements. *Id.* at 1371. The Federal Circuit echoed the Supreme Court when describing what was necessary for a plaintiff to prove its prima facie case:

> In order to establish a prima facie case of wage discrimination under the Equal Pay Act, plaintiffs must show that an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

*Id.* at 1372 (internal citations omitted). The court added that plaintiff did not have to make "a showing of discriminatory intent" but had to provide "a showing that discrimination based on sex exists or at one time existed." *Id.* at 1373. Defendant here focuses on the court's statement that "an Equal Pay Act violation is established when an employee demonstrates past or present discrimination based on sex." *Id.* at 1374. Unlike *Corning Glass Works*, the court determined that there was no genuine issue of fact that the pay scales for nurse practitioners and physician assistants were historically based on factors other than sex, such as one group's salary being determined by a regional versus national pay scale. *Id.* at 1373. In the absence of a history of gender discrimination, as in *Corning Glass Works*, the Federal Circuit ruled there was no violation of the Equal Pay Act. *Id.* at 1374.

Defendant believes that this precedent supports its view that merely pointing to a single comparator is insufficient to satisfy plaintiff's prima facie case, particularly when, as here, there are other male employees who earn less than she. We disagree. In *Yant*, the Federal Circuit was confronted with very different facts from those in this case. Consequently, it had no occasion to speak directly to the legal issue defendant raises.[9] In effect, defendant is conflating plaintiff's statutory burden of proof with the need to respond to a defense. We adopt the view expressed in *Moorehead v. United States*: "To show a prima facie case, 'the plaintiff need not compare herself to all similarly classified male employees, but may choose one or more among those allegedly doing substantially equal work.'" 88 Fed. Cl. 614, 619 (2009) (quoting *Ellison v. United States*, 25 Cl. Ct. 481, 486 (1992)). The evidence has plainly demonstrated that plaintiff was paid less than Mr. Propster for equal work. Plaintiff has therefore met her initial burden, and the burden of proof shifts to defendant to demonstrate an affirmative defense.

> [9] We note that even if the Federal Circuit meant to impose a new requirement of evidential proof of gender discrimination on an Equal Pay Act claim, the result here would remain the same. As discussed

below, defendant has proven its affirmative defense.

Judge Loren Smith followed a different route and seemed to require direct evidence of discrimination through statistics or other evidence in a traditional comparator EPA case. *Branch v. United States*, 101 Fed. Cl. 411, 415 (2011). This Court noted the decisional divergence. See *Jordan v. United States*, 122 Fed. Cl. 230 n.27 (2015) (Lettow J.).

Recently, Judge Campbell-Smith omitted the *Yant* statistical analysis from a decision explaining the burden of proof on an EPA plaintiff in *Spellers v. United States*, ___Fed. Cl. ___ (No. 18-47C 12/1/21):

> The parties agree that plaintiff bears the burden of establishing a prima facie case under the EPA, which requires her to demonstrate that the agency paid "different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (internal quotation marks omitted); see ECF No. 56 at 30 (citing *Corning*, 417 U.S. at 195); ECF No. 59 at 33 (citing *Corning*, 417 U.S. at 195). Put another way, to carry her burden, plaintiff must identify a male comparator whose work was "substantially equal," when focusing on "the individuals' primary rather than incidental duties." *Jordan v. United States*, 122 Fed. Cl. 230, 241 (2015) (internal quotations omitted). "It is the job as a whole, not just selected aspects of it that must form the basis of the comparison." *Ellison v. United States*, 25 Cl. Ct. 481, 487 (1992) (citing *Gunther v. Cnty. of Washington*, 623 F.2d 1303, 1309 (9th Cir. 1979), *aff'd*, 452 U.S. 161 (1981)).

> "Once plaintiff establishes her prima facie case, the burden shifts to defendant to demonstrate one of [the] four statutorily articulated affirmative defenses." *Brooks v. United States*, 101 Fed. Cl. 340, 344 (2011). If defendant demonstrates that payment was made pursuant to one of the four affirmative defenses, plaintiff can present evidence to rebut the affirmative defense. "At the summary judgment stage, this means evidence from which it may reasonably be inferred that the real factor behind wage differentials was not the identified 'factor other than sex.'" *Behm v. United States*, 68 Fed. Cl. 395, 400 (2005). Plaintiff's showing may be made either through evidence of an employer's "intent to discriminate on the

basis of gender," or through circumstantial evidence that defendant's affirmative defense is pretextual. *Id.*

The Federal Circuit did not suggest before *Gordon* that *Yant* varied the order of proof (or pleading) in a traditional EPA case. In *Kaplan v. United States*, ___Fed. Appx.___ (Fed. Cir. 2018 NP), affirming summary judgment based on a merit system defense, the circuit explained, with no suggestion that *Yant* required intentional or historical discrimination in a comparator case; the test for a *prima facie* case was a disparity:

> The basic two-part proof scheme under that statute is not in dispute here. As relevant here, a plaintiff may establish a prima facie case of a violation by showing that she was paid "at a rate less than the rate" of her male counterparts for "work . . . requir[ing] equal skill, effort, and responsibility"; and if that is shown, the burden shifts to the government to prove that the payment system in question falls into one of the four enumerated exceptions. *See, e.g., Yant v. United States*, 588 F.3d 1369, 1372 (Fed. Cir. 2009). Proof of payment pursuant to a merit-based system does not require proof that the system is entirely free from subjectivity. *See, e.g., EEOC v. Aetna Ins. Co.*, 616 F.2d 719, 726 (4th Cir. 1980) ("An element of subjectivity is essentially inevitable in employment decisions; provided that there are demonstrable reasons for the decision, unrelated to sex, subjectivity is permissible."); *Harrison-Pepper v. Miami Univ.*, 103 F. App'x 596, 601 (6th Cir. 2004) ("use of subjective criteria does not preclude [a] merit-based system from constituting an affirmative defense"). [Slip Op. at 6-7]

E.   MOORE NEED NOT NOW DISPROVE THAT IT WAS NECESSARY FOR HIM TO APPLY FOR PAY TRANSITION TO ASSERT AN EPA COMPLAINT

The government argues that Moore fails to state a case because he did not did not apply for pay transition during its open period. The government is arguing an affirmative defense in advance of its answer.

The affirmative defense is properly briefed on a factual record through summary judgment, following discovery. There are factual issues: whether SEC

already had Moore's resume as part of his job application process; whether SEC already had all the information reasonably required concerning his current duties, given SEC's HR documentation (position description, performance standards, performance ratings and associated narratives of work performed).[20]

Without regard to any factual issues concerning information SEC had in its files and any need for an application in the form of a resume from a current employee with a long record of excellent performance as an exam manager, there's the question of whether EPA protection is lost because someone doesn't apply for a pay raise that is later given to someone of different sex doing the same work, requiring the same effort, and under the same working conditions. It is a little like someone being asked by an employer if they want to receive the minimum wage or overtime pay and that person gets neither when they don't offer an affirmative response. FLSA protections are not lost in that manner. Nor are the protections of EPA, an amendment to FLSA.

EPA is part of FLSA. Its benefits cannot be waived. *Boaz v. FedEx Customer Information Services, Inc.*, 725 F.3d 603, 607 (6th Cir. 2013); *see, e.g., Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 (1974); *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945); *cf. Mudge v. United States*, 59 Fed. Cl. 527 n.7 (2004) (Lettow, J) (citing *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 745 (1981)); 29 CFR 541.4.

Advancing beyond waiver, whether a resume was a reasonable business

---

[20]   This information was in the files SEC routinely maintains. A few documents taken from the EEO case records are in the Appendix. [App. 23, 28]

necessity for consideration in pay transition will likely be a disputed factual issue, as will be the funding limitations for the seemingly perpetual pay transition benefits.[21] The extent of the factual disputes depends on the affirmative defenses asserted in the governments answer.

F.    RECOVERY PERIOD

The government is partially right, partially wrong, on the EPA recovery period.

It is correct that the six-year Back Pay recovery period does not apply. That statute is in turn limited by EPA as a money-mandating statute, with its FLSA two and three year limitation period. 5 USC 5596(a)(4). No decision has been located extending the temporal reach of the BPA to the FLSA, and the matter of EPA continuing violations seems settled by *Weber v. United States*, 71 Fed. Cl. 717, 721 ff. (2006) (Lettow, J), the limitations of equitable tolling and estoppel by *Lange v. United States*, 79 Fed. Cl. 628, 633 (2007) (Williams, J.).

Moore's complaint pleads facts allowing a finding of willfulness to extend EPA/FLSA recovery to three years, at Para. 14:

> After Plaintiff's family-related issues abated, but after the administrative deadline set by SEC for application for pay transition consideration, in August and September 2016, after he learned of the pay disparities resulting from the Pay Transition Program, Plaintiff requested of the SEC's personnel director, and of other managers, that he be permitted to receive consideration for the transition program. SEC's personnel director declined to do so, instead suggesting to him instead that he consider using an agency grievance process or the federal Equal Employment complaint process.

---

[21]   The pay transition adjustments were apparently permanent, that is, continuing, and funded on an annual basis according to the SEC IG's review. [App. 12-13]

Moore does not detail in his complaint the conversations with SEC's HR director and managers, but the proof will be that he told them of the disparity of pay relative to at least one comparator and asked that his pay be adjusted. [App. 63, 71-72] They demurred, eventually leading to this lawsuit. From the knowing failure of management to resolve a disparity, a fair inference of willfulness may be drawn by the Court. Plaintiff is required to briefly and concisely plead facts, not legal conclusions masquerading as facts. Moore's assertions about his protests to HR and management about the pay disparity are not frivolous. They form an adequate basis for further factual development and adjudication.

The determination of willfulness—really a state of mind, or knowledge, of circumstances requiring inquiry—is fact-dependent, assessed by a fact finder. Under *Cooke v. United States*, 85 Fed. Cl. 325, 351-52 (2008) (Wheeler, J.):

> . . . A violation is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Allison*, 39 Fed. Cl. at 478 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)); *see also Adams*, 350 F.3d at 1229 (citation omitted); *Nerseth v. United States*, 17 Cl. Ct. 660, 666 (1989). "Willful" generally equates to voluntary or deliberate conduct. *Angelo v. United States*, 57 Fed. Cl. 100, 109 (2003). OPM has defined "reckless disregard" as a "failure to make adequate inquiry into whether conduct is in compliance with the Act." *Id.* at 108 (citing 5 C.F.R. § 551.104 (2008)); *see also Equal Employment Opportunity Comm'n v. White Son Enters.*, 881 F.2d 1006, 1012 (11th Cir. 1989) (affirming the district court's conclusion that the employer acted with reckless disregard by failing to investigate its legal obligations with respect to employment matters). The employee bears the burden of proving the willfulness of the employer's conduct. *See Adams*, 350 F.3d at 1229 (citations omitted); *Angelo*, 57 Fed. Cl. at 109 (citations omitted).

This Court provided analysis similar to *Cooke,* and added in *Jordan v. United States*, 122 Fed. Cl. 230, 240 (2015) (Lettow, J.):

Under the circumstances presented, the court cannot accept Ms. Jordan's contention that there is evidentiary support for the proposition that the FAA's alleged violation of the Equal Pay Act was willful. As the government points out, plaintiff did not file her EEO complaint until February 8, 2013, almost a year and a half after August 28, 2011, the date on which she alleges the disparity became actionable. See Def.'s Mot. at 39. Moreover, the filing of a formal administrative complaint alone does not toll the statute of limitations for Equal Pay Act claims. *See, e.g., Hickman v. United States,* 10 Cl. Ct. 550, 552 (1986). Merely putting the FAA on notice of a pay discrepancy and the claimed applicability of the Equal Pay Act is not enough to establish that the FAA willfully violated the statute. *See Santiago,* 107 Fed. Cl. at 160 (noting that "willfulness requires more than mere awareness"). Finally, contrary to plaintiff's assertions, it is not the case that the FAA "t[ook] no steps to remedy the situation," Pl.'s Opp'n at 26; the FAA conducted an investigation and also arranged for plaintiff to serve on a detail in the Civil Rights Division, see Def.'s Mot. at 39 (citing A369-83 (FAA Report of Investigation (Aug. 5, 2013))). Ms. Jordan has put forth no meaningful evidence of willful disregard of plaintiff's claims by the FAA. Therefore, the two-year statute of limitations period applies, and plaintiff's claims arising prior to December 16, 2011 are time-barred.

*Jordan* determined that willfulness was not established by mere notice—when, apparently there were steps to remedy the situation. Here there was more than notice. There were multiple protests by Moore, including to the SEC HR manager who had responsibility for pay transition. *Cooke* cited with apparent approval *EEOC v. White & Son Enters.,* 881 F.2d 1006, 1012 (11th Cir. 1989) ("Appellant has not offered sufficient evidence to establish that it acted in reasonable good faith. Orvis White even testified that he made no effort to investigate the company's legal obligations with respect to employment matters. *See Reeves v. International Telephone and Telegraph Corp.,* 616 F.2d 1342, 1353 (5th Cir. 1980) ("Good faith requires some duty to investigate potential liability. . . . "), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981).").

The ruling in *Jordan* was on summary judgment, as it was in *Cooke*. The

parties had the opportunity for evidentiary development. What management did when Moore complained of disparate pay is unknown (other than to tell him to go file an EEO complaint or grievance). Evidence of institutional knowledge and internal efforts to address SEC's liability under EPA following Moore's complaints will be developed through discovery. The EEOC definition of willfulness is two-part, referenced in both *Cooke* and *Jordan*, and seems fairly applicable here. Under 5 CFR 551.104 (FLSA definitions):

> *Willful violation* means a violation in circumstances where the agency knew that its conduct was prohibited by the Act or showed reckless disregard of the requirements of the Act. All of the facts and circumstances surrounding the violation are taken into account in determining whether a violation was willful.

> *Reckless disregard* of the requirements of the Act means failure to make adequate inquiry into whether conduct is in compliance with the Act.

Plaintiff notes that the EEOC regulation may be more liberal toward plaintiffs than might be the Supreme Court, interpreting the FLSA limitations period in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988):

> In common usage the word "willful" is considered synonymous with such words as "voluntary," "deliberate," and "intentional." *See* Roget's International Thesaurus §622.7, p. 479; §653.9, p. 501 (4th ed. 1977). The word "willful" is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent. The standard of willfulness that was adopted in *Thurston*—that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute—is surely a fair reading of the plain language of the Act.

Where on the continuum between awareness, notice, neglect, or reckless disregard for EPA obligations the government's conduct falls is a matter of fact

inappropriate for summary disposition based on only a complaint.[22]

G.    DISCOVERY TO BE SOUGHT BY PLAINTIFF

The government attaches a decision of an EEOC administrative judge, and that decision is but one part of an administrative record compiled during a Title VII and EPA EEO complaint at SEC processed through EEOC procedures outlined at 29 CFR Part 1614.[23] The government quotes from sections of the AJ's decision to make points concerning facts that the government may seek to argue when presenting its affirmative defenses: the propriety of the application period for the pay transition program; budgetary limitations; treatment of other employees who may have belatedly applied for pay transition (and when those employees applied, and why their applications were or were not accepted); whether a resume was needed for a pay transition application (or whether the SEC already had resumes when people were initially hired and whether it had all manner of information—performance appraisal, appraisal standards, position descriptions—in its files that negated the need for an application process requiring a resume). Those matters are best resolved after the government files its answer and the metes

---

[22]  This Court does not supervise management of personnel administration in federal agencies. That said, it seems in the worst tradition of labor relations to pay different wages to employees doing the same work at the same location under the same working conditions (allowing for seniority adjustments). Irrespective of notions of good management, perpetuation of unequal wages for equal work is in violation of federal policy expressed in statute. 5 USC 2301 (Merit System Principle 3: "Equal pay should be provided for work of equal value, with appropriate consideration of both national and local rates paid by employers in the private sector, and appropriate incentives and recognition should be provided for excellence in performance.")

[23]  The complaint is at App. 3.

and bounds of the case are better defined and suitable for discovery, any later motion, or trial.

## CONCLUSION

The government's motion to dismiss should be denied. If the Court finds a specific pleading deficiency, Plaintiff requests leave to amend his complaint.

Respectfully submitted,

/s/ Peter Broida

Peter B. Broida
Suite 203
1840 Wilson Blvd.
Arlington, VA 22201
703-841-1112
703-841-1006 (facsimile)
peterbroida@gmail.com

Attorney for Plaintiff

December 17, 2021

SERVICE

I certify that on December 17, 2021, a copy of this response was filed electronically through the Electronic Case Filing System, and I understand that notice of the filing will be served on counsel for the Defendant through the ECF system.

/s/  Peter  Broida

Peter  B.  Broida
Suite  203
1840  Wilson  Blvd.
Arlington,  VA  22201
703-841-1112
703-841-1006  (facsimile)
peterbroida@gmail.com